UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____
                                        :
In re                                   :        Chapter 11
                                        :
HYDROGEN, L.L.C.,                       :        Case No. 08-14139 (AJG)
                                        :
                Debtor.                 :
                                        :
                                        :
_____:
                                        :
OFFICIAL COMMITTEE OF UNSECURED         :
CREDITORS OF HYDROGEN, L.L.C.,          :
                                        :
                Plaintiff,              :
                                        :
        v.                              :        Adv. Pro. No. 09-01142 (AJG)
                                        :
LEO BLOMEN, BLOMENCO B.V., JOHN         :
FREEH, JOSHUA TOSTESON, LARRY SCOTT     :
WILSHIRE, GREGORY MORRIS,               :
CHRISTOPHER GAROFALO, MICHAEL           :
BASHAM, ALTON ROMIG, JR., HOWARD        :
YANA-SHAPIRO, BRIAN BAILYS, BRIAN       :
McGEE, PHILIP KRANENBURG, ANDREW        :
THOMAS, JOHN and JANE DOES 1-10, and    :
ABC CORPS. 1-10                         :
                                        :
                Defendants.             :
_____:


OPINION CONCERNING
DEFENDANTS' MOTIONS TO DISMISS AMENDED COMPLAINT


A P P E A R A N C E S

ARENT FOX LLP
1675 Broadway
New York, New York 10019

Attorneys for the Official Committee of Unsecured Creditors

Schuyler G. Carroll, Esq.
James M. Sullivan, Esq.
Adrienne W. Blankley, Esq.
Of Counsel


GREENBERG TRAURIG LLP
200 Park Avenue
New York, New York 10166

Attorneys for Defendants Leo Blomen and Blomenco B.V.

Maria J. DiConza, Esq.
Adam C. Dembrow, Esq.
Of Counsel


STEVENS & LEE, P.C.
485 Madison Avenue, 20th Floor
New York, NY 10022

Attorneys for Defendant John Freeh

Alec P. Ostrow, Esq.
Constantine D. Pourakis, Esq.
Of Counsel


ARTHUR J. GONZALEZ
Chief United States Bankruptcy Judge


## FACTS

*Overview and Procedural History*

HydroGen, L.L.C. (the "Debtor") was a development stage company that manufactured

phosphoric acid fuel cells for use in modules and power plants fueled by hydrogen and

hydrocarbon gases for application by industrial and chemical industry end-users.  The Debtor, an

Ohio limited liability company, was a wholly-owned subsidiary of HydroGen Corporation (the

"Parent"), an SEC-reporting company.  On October 22, 2008 (the "Petition Date"), the Debtor

2

filed a voluntary petition (the "Petition") under chapter 11 of the Bankruptcy Code (the "Code").

The case before the Court is an adversary proceeding commenced by the Official Committee of

Unsecured Creditors (the "Committee") to avoid pre-petition transfers of certain compensation,

including bonus payments, to current and former officers and directors of the Debtor and/or the

Parent and to bring certain related claims against such officers and directors and certain unnamed

defendants who may be determined to have liability upon further discovery (collectively,

"Defendants").  The Committee acquired the standing to pursue the claims asserted in the instant

proceeding pursuant to an Opinion and Order, dated May 7, 2009, approving, *inter alia*,

assignment *nunc pro tunc* of estate causes of action from the Debtor to the Committee.

      The Committee filed the amended complaint (the "Amended Complaint" or "AC") on

May 12, 2009, setting forth ten causes of action: (1) breach of fiduciary duty, (2) aiding and

abetting breach of fiduciary duty, (3) avoidance of constructive fraudulent transfers pursuant to

section 548(a)(1)(B) of the Code, (4) avoidance of constructive fraudulent transfers pursuant to

section 544(b) of the Code and applicable state law, (5) unjust enrichment, (6) breach of

employment agreements, (7) deepening insolvency, (8) equitable subordination, (9) objection to

Defendants' claims against the Debtor's estate, and (10) avoidance of preferential transfers

pursuant to sections 547 and 550 of the Code.[1]  In response, Defendants Dr. Leo Blomen and

Blomenco B.V. moved to dismiss the Amended Complaint in its entirety under Federal Rule of

Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

---

[1] The Committee filed its initial complaint on April 1, 2009.  Primarily stylistic revisions and grammatical corrections had been made to the initial complaint in order to produce the Amended Complaint.  As such, the Committee did not include any additional relevant facts in the Amended Complaint.  The conclusions set forth in this Opinion would not have differed if the Court were to address the allegations set forth in the initial complaint instead.

Defendant John Freeh moved under Rule 12(b)(6) to dismiss solely the avoidance claims, the

unjust enrichment claim and the deepening insolvency claim.[2]


*Factual Allegations Set Forth in the Amended Complaint*

The following paragraphs set forth factual allegations found in the Amended Complaint,

which the Court must assume to be true on a Rule 12(b)(6) motion.  *See Chambers v. Time*

*Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  Legal conclusions set forth in the Amended

Complaint have been excluded to the extent they are not intertwined with relevant facts, as they

should not be presumed to be true or correct and do not bolster the factual sufficiency of a

complaint on a motion to dismiss.  *See Starr v. Sony BMG,* 592 F.3d 314, 317 n.1 (2d Cir. 2010)

(noting that a court "'considering a motion to dismiss can choose to begin by identifying

pleadings that, because they are no more than conclusions, are not entitled to the assumptions of

truth.'") (quoting *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949-50 (2009)).

The Debtor began operating in November 2001.  Because it was a development stage

company, it required significant financing in order to sustain operations until it achieved

profitability.  By December 31, 2007, the Debtor had only $8,100,000 in cash remaining.  At

such time, Defendants allegedly "knew or should have known that its available cash would not

be sufficient to fund its operations after mid-May 2008 absent additional financing."  AC at ¶ 33.

Defendants "knew or should have known that [the Debtor] needed immediate, substantial

additional capital in the form of debt, equity, or proceeds from the sale of assets in order to

maintain and increase the value of the company" and "knew or should have known" that one or

more asset sales was necessary given the undercapitalization of the Debtor.  AC at ¶ 36.

---

[2] Rather than moving to dismiss the Amended Complaint or a portion thereof, the remaining named Defendants
proceeded to file answers thereto.

Despite the lack of prospects for additional significant financing after December 31, 2007, Defendants "permitted [the Debtor] to continue operating as if it had limitless sources of financing." AC at ¶ 34. Instead of modifying the Debtor's business plan to account for its limited prospects for additional financing, Defendants made unspecified plans to increase the Debtor's spending. AC at ¶ 35. Defendants allegedly authorized, approved and/or entered into certain unspecified transactions that were inappropriate and incurred unspecified obligations that were not in the Debtor's best interest, all of which caused "debilitating financial harm" to the Debtor and rendered it insolvent. AC at ¶ 4. In addition, Defendants "saddled" the Debtor with additional unspecified debts that they "knew or should have known would be beyond the Debtor's ability to pay." *Id.*

Within the two-year period prior to the Petition Date, Defendants permitted bonus payments in the aggregate amount of $410,652.92 to six Defendants.[3] AC at ¶ 52, Exh. A. In addition, salary, benefits, payments of expenses, stock and/or stock options – each in unspecified amounts – were also paid to Defendants. AC at ¶ 52. The Committee considers the bonus payments and compensation to be "substantial" and "excessive". AC at ¶ 37, 52. By making such payments to themselves, Defendants "placed their own self-interests ahead of the interests of [the Debtor] and its creditors and equity holders." *Id.* At all relevant times, the Debtor's liabilities allegedly exceeded its assets. AC at ¶ 38. And at all relevant times Defendants allegedly knew of the Debtor's insolvent condition. AC at ¶ 41.

---

[3] Schedule 3(c) ("Payments to Insiders within One Year of Filings") to the Statement of Financial Affairs lists the amount of each bonus and the identity of the recipient with respect to each bonus payment. Dr. Leo Blomen, a Defendant who filed a Rule 12(b)(6) motion, is listed on the schedule as a recipient of a bonus payment in the amount of $168,452.92 on February 19, 2008. The other individual Defendant who filed a motion to dismiss, John Freeh, was not listed as a bonus recipient. Both Dr. Blomen and John Freeh – along with non-movant Defendants Larry Scott Wilshire, Gregory Morris, Philip Kranenburg, Christopher Garofalo, Andrew Thomas, Joshua Tosteson, Michael Basham, Alton Romig, Howard-Yana Shapiro, Brian McGee and Brian Bailys – are listed in more than one place on the schedule as recipients of various payments from the Debtor, including payroll deposits.

**DISCUSSION**

*Standard of Review for a FED. R. CIV. P. 12(b)(6) Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) is incorporated into bankruptcy procedural rules

by Federal Rule of Bankruptcy Procedure 7012(b).  In reviewing a motion to dismiss pursuant to

Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint and

draw all reasonable inferences in the plaintiff's favor.  *See Chambers*, 282 F.3d at 152; *In re*

*Bally Total Fitness of Greater New York, Inc.*, 2009 WL 1684022 at *1 (S.D.N.Y. June 15, 2009)

(quoting *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006)).  In

addition to the complaint, the court may also consider (1) any "document incorporated by

reference in the complaint," *Campo v. Sears Holdings Corp.*, 635 F.Supp.2d 323, 328 (S.D.N.Y.

July 21, 2009); (2) any document the plaintiff "has in [his] possession or had knowledge of and

upon which [he] relied in bringing suit" *Chambers*, 282 F.3d at 153; *accord Campo*, 635

F.Supp.2d 323, 328 (indicating that the court may consider, *inter alia*, "documents integral to

and relied upon in the complaint, even if not attached or incorporated by reference") (internal

quotation marks omitted); and (3) "facts of which judicial notice may be taken." *Chambers*, 282

F.3d at 153.

Federal Rule of Civil Procedure 8(a)(2) on its face requires "a short and plain statement

of the claim" in the complaint showing that the plaintiff is "entitled to relief."  Recent Supreme

Court jurisprudence has clarified the standard in evaluating pleading sufficiency under Rule 8.

*See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *accord Iqbal,* 129 S.Ct. at 1949-

50 (providing guidance on the application of *Twombly*).  In order to survive a Rule 12(b)(6)

motion, the complaint must contain "enough factual matter (taken as true)" to "raise [the] right to

relief above the speculative level," *Twombly*, 550 U.S. at 555-56; *accord Campo*, 635 F.Supp.2d

323, 328 (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007); *Iqbal*,

129 S.Ct. at 1949).  As such, although "detailed factual allegations" are not necessary, "a

formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 129 S.Ct. at 1949

(quoting *Twombly*, 550 U.S. at 555).  Rule 8(a) "contemplates the statement of circumstances,

occurrences, and events in support of the claim presented and does not authorize a pleader's bare

averment that he wants relief and is entitled to it." *Twombly*, 550 U.S. at 556, n.3 (quoting 5

*Wright & Miller* § 1202, at 94, 95) (internal quotation marks omitted).  Given the foregoing, a

complaint that merely contains "'naked assertion[s]' devoid of 'further factual enhancement'"

cannot survive a motion to dismiss. *See Iqbal*, 129 S.Ct. at 1950 (quoting *Twombly*, 550 U.S. at

557).

        Two working principles underlie the standard. *See Iqbal*, 129 S.Ct. at 1949.  First, the

court is not "bound to accept as true [any] legal conclusion couched as a factual allegation." *Id.,*

at 1949-50; *accord Air Atlanta Aero Engineering Limited v. SP Aircraft Owner I, LLC*, 639

F.Supp.2d 185, 189 (S.D.N.Y. July 23, 2009).  Second, "only a complaint that states a plausible

claim for relief survives" a Rule 12(b)(6) motion. *Iqbal*, 129 S.Ct. at 1949-50; *accord In re

Bally Total Fitness*, 2009 WL 1684022 at *1 ("To survive a 12(b)(6) motion to dismiss, the

allegations in the complaint must meet a standard of plausibility.") (internal quotation marks

omitted) (citing *Twombly,* 550 U.S. at 564).  "Judicial experience and common sense" will be

required in determining the plausibility of a claim. *Iqbal*, 129 S.Ct. at 1950.  The foregoing

construction of Federal Rule of Civil Procedure 8 is intended as a policy matter to weed out

meritless cases prior to the commencement of discovery, thereby minimizing the expenditure of

the judicial system's resources on such cases. *See Twombly*, 550 U.S. at 559-60.

7

*Breach of Fiduciary Duty*

The Committee states that Defendants, as "the current and/or former officers and directors of the Debtor and/or Parent," owed fiduciary duties to the Debtor and its creditors.  AC at ¶ 3.  By permitting the Debtor to continue operating, increasing its spending, saddling it with debt and paying themselves allegedly excessive compensation, Defendants allegedly breached their fiduciary duties to the Debtor, its creditors and equity holders.

I.        Choice-of-Law Analysis – Internal Affairs Doctrine

Before assessing the pleading sufficiency of the breach-of-fiduciary-duty claim, the Court must first determine the applicable state law.  Bankruptcy courts adjudicating a state law claim should apply the choice-of-law rules of the forum state in the absence of federal policy concerns. *See In re Gaston & Snow*, 243 F.3d 599, 601-02 (2d Cir. 2001).  The internal affairs doctrine is a choice-of-law rule that applies to issues relating to disputes involving corporations and has generally been followed throughout this country, including New York, the forum state in the instant case.  *See Hausman v. Buckley*, 299 F.2d 696, 702-03 (2d Cir. 1962).  Under the doctrine, issues relating to the internal affairs of a corporation are to be governed by the law of its state of incorporation because application of such body of law "achieves the need for certainty and predictability of result while generally protecting the justified expectations of parties with interests in the corporation."  *NatTel, LLC v. SAC Capital Advisors LLC*, 2006 WL 957342 at *2 (2d Cir. 2006) (internal citations omitted); *see also Restatement*, *Conflict of Laws*, § 183, comment b (1934).  A claim for breach of fiduciary duty brought against a corporate officer or director raises issues relating to the internal affairs of a corporation and therefore should be governed by the law of the state of incorporation of the relevant corporation.  *See Walton v.*

8

*Morgan Stanley & Co., Inc.*, 623 F.2d 796, 798 n.3 (2d Cir. 1980) (noting that the choice-of-law rules of New York dictate "that the law of the state of incorporation govern[ ] an allegation of breach of fiduciary duty owed to a corporation"); *Lachman v. Bell*, 353 F.Supp. 37, 39-40 (S.D.N.Y. 1972) (stating that a breach-of-fiduciary-duty claim is "governed in New York by the law of the State of incorporation"). The internal affairs doctrine has also been applied to limited liability companies. *See Ritchie Capital Management, L.L.C. v. Coventry First LLC*, 2007 WL 2044656, *4 (S.D.N.Y.) (applying Delaware law to a corporate veil piercing claim brought against a Delaware limited liability company, citing the internal affairs doctrine as the basis therefor). Based on the foregoing analysis, Ohio law, which is the law of the Debtor's state of incorporation, applies to the breach-of-fiduciary-duty claim brought against Defendants because the Debtor is a limited liability company incorporated in Ohio.

II.     Pleading Sufficiency

Under Ohio law, a breach-of-fiduciary-duty claim consists of the following three elements: "(1) the existence of a duty arising from a fiduciary relationship, (2) a failure to observe such duty, and (3) an injury proximately resulting therefrom." *The Unencumbered Assets, Trust v. JP Morgan Chase Bank* (*In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*)*,* 617 F.Supp.2d 700, 717 (S.D. Ohio 2009) (internal citations omitted). To survive a motion to dismiss, the Amended Complaint should provide sufficient facts in support of each element of the claim in order to "raise [the] right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

It is "well-established in Ohio that corporate directors and officers have a fiduciary relationship with respect to the corporation they serve." *Liquidating Trustee of the Amcast Unsecured Creditor Liquidating Trust v. Baker* (*In re Amcast Indus. Corp.*), 365 B.R. 91, 103

9

(Bankr. S.D. Ohio 2007) (quoting *Radol v. Thomas*, 722 F.2d 244, 256 (6th Cir. 1985)) (other

citations omitted); *see also In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*, 617 F.Supp.2d at 718

("[A] corporate officer occupies a position of trust in relation to his corporation.") (internal

citation and quotation marks omitted).  Ohio Revised Code Section 1701.59 ("Authority of

directors; liability; standard of care") codifies a director's fiduciary duty and standard of care.[4]

*See In re Amcast Indus. Corp.*, 365 B.R. at 103.  Although the fiduciary duty of a corporate officer

has not been similarly codified, the basis for such duty is found in common law.  *See Id.*

    The Amended Complaint alleges that Defendants "consist of a group of current and/or

former officers and directors of the Debtor and/or Parent."  AC at ¶ 3.  Under applicable Ohio law,

those Defendants who had been officers or directors of the Debtor clearly owe a fiduciary duty to

the Debtor during their tenure.  In contrast, although the Court has not found any Ohio law directly

on point, the weight of authority around the country holds that the directors of a parent corporation

owe *no* fiduciary duties to a wholly-owned subsidiary.  *See Westlake Vinyls, Inc. v. Goodrich

Corp.*, 518 F.Supp.2d 902, 916-17 (W.D. Ky 2007) (citing *Anadarko Petroleum Corp. v.

Panhandle E. Corp.*, 545 A.2d 1171, 1174 (Del. 1988); *Abex, Inc. v. Koll Real Estate Group, Inc.,*

1994 WL 728827, No. 13462, *16 (Del. Ch. Dec. 22. 1994); *Household Reinsurance Co., Ltd. v.

Travelers Ins. Co.,* No. 91 C 1308, 1992 WL 22220, **3-4 (N.D.Ill. Jan. 31, 1992); *Resolution

Trust Corp. v. Bonner*, No. H-92-430, 1993 WL 414679, **2-3 (S.D. Tex. June 3, 1993)) (other

citation omitted).  As such, there is no basis for the proposition that those Defendants who had

been officers and/or directors of solely the Parent owe any fiduciary duty to the Debtor.  The

Amended Complaint does not contain enough facts for the Court to decipher the relationship

---

[4] Section 1701.59 requires a director to perform his duties "in good faith, in a manner the director reasonably
believes to be in or not opposed to the best interests of the corporation, and with the care that an ordinarily prudent
person in a like position would use under similar circumstances."  Ohio Rev. Code § 1701.59(B).

between each individual Defendant, on the one hand, and either the Debtor or the Parent, on the

other hand.  The Amended Complaint does specifically state, however, that Dr. Blomen – the only

individual Defendant to have filed a motion to dismiss with respect to the breach-of-fiduciary-duty

claim – and certain other individual Defendants have been directors or officers of the Debtor "at

various times between 2001 and 2008."[5]  AC at ¶11.  Although this allegation is sufficient to

establish the existence of a fiduciary duty between Dr. Blomen and the Debtor at some point of

time between 2001 and 2008, the Court is unable to glean from the facts set forth in the Amended

Complaint whether the fiduciary relationship existed specifically between late 2007 and the

Petition Date, i.e. the period during which the alleged violations of fiduciary duties took place.

Thus, the Court is not persuaded that the Committee has adequately pled the first element of the

fiduciary duty claim, i.e. existence of a fiduciary duty between the relevant moving Defendant and

the Debtor.

Even if the Court were to find in favor of the Committee on the pleading sufficiency of

the first element of the claim, the claim would still have failed to survive Dr. Blomen's motion to

dismiss, as the next element of the claim – failure to observe a fiduciary duty – has also not been

alleged with the requisite factual support.  Vague and general allegations that certain unspecified

transactions had been entered into and that certain unnamed obligations had been incurred by the

Debtor cannot form the factual basis for an alleged failure on the part of Defendants to observe

their fiduciary duty, as the "circumstances, occurrences, and events" required to be alleged under

---

[5] Dr. Blomen states in his Motion to Dismiss that he was the CEO of the Debtor until November 2007 and thereafter served only as a director of the Parent.  *See* Motion of Dr. Leo Blomen and Blomenco B.V. to Dismiss Amended Adversary Complaint at p.11, n.4.  He argues that because the alleged fiduciary duty breaches occurred after December 31, 2007 (at which time he had already resigned from the CEO post), he does not owe any fiduciary duty to the Debtor during the time period of the alleged breaches.  *See Id.* at p.11.  Because Dr. Blomen's argument involves factual assertions that should not be resolved on a Rule 12(b)(6) motion, it is inappropriate for the Court to address his argument at this stage of the proceeding.  In any event, as stated below, the breach-of-fiduciary-duty claim against Dr. Blomen is being dismissed on other grounds.

Federal Rule of Civil Procedure 8(a) are entirely absent in the Amended Complaint. *Twombly*,

550 U.S. at 556 n.3 (internal citation omitted).  Similarly, although the Amended Complaint does

specify the amount of bonus payment made to Dr. Blomen, it alleges in a conclusory fashion that

such payment, along with other bonuses and compensation paid to Defendants, was excessive and

that Defendants made such payments "in bad faith and/or in a reckless and/or a grossly negligent

manner, thereby violating their fiduciary duties to the Debtor."  AC at ¶ 44.  In light of the general

absence of supporting facts set forth in the Amended Complaint, the Court finds the breach-of-

fiduciary-duty claim to be "speculative" under *Twombly*. [6]  *Cf. In re I.E. Liquidation, Inc.*, 2009

WL 2707223 at *5-6 (Bankr. N.D.Ohio 2009) (finding in connection with a motion to dismiss a

breach-of-fiduciary-duty claim that the element relating to failure to observe such duty has been

sufficiently pled because the complaint cited "specific events, the incurrence of more debt and

grant of liens" to an affiliate, all of which had been effected to put the corporate directors'

personal interests ahead of the corporation's); *see also In re Nat'l Century Fin. Enters., Inc. Inv.*

*Litig.*, 617 F. Supp. 2d at 705, 717 (upholding a breach-of-fiduciary-duty claim on a Rule 12(b)(6)

---

[6] In addition to breaches of fiduciary duties to the Debtor, the Amended Complaint also alleges that Defendants violated their fiduciary duties to the creditors of the Debtor.  Ohio caselaw is split as to whether directors and officers of a corporation owe any fiduciary duty to its creditors upon the corporation's insolvency.  *See In re Amcast Indus. Corp.*, 365 B.R. 91 at 104-09 (Bankr. S.D. Ohio 2007) (discussing split and providing historical background); *compare In re Amcast Indus. Corp.*, 365 B.R. at 110 (holding that corporate directors do not owe any fiduciary duty to creditors, relying on an interpretation of Ohio Rev. Code § 1701.59, which states that a director *may* consider the interests of creditors when making important corporate decisions) (emphasis added)) *with DeNune III v. Consol. Capital of North America, Inc.*, 288 F.Supp.2d 844, 859 (N.D. Ohio 2003) (holding that under Ohio law officers and directors of an insolvent corporation owe a fiduciary duty to the corporation's creditors not to waste corporate assets and citing for this proposition *Thomas v. Matthews*, 94 Ohio St. 32, 47 (1916), an old Ohio Supreme Court case that some consider to have been superseded by the intervening enactment of Ohio Rev. Code § 1701.59).  There is no need, however, for this Court to decide whether the Ohio Supreme Court, if faced with the issue today, would recognize the existence of any fiduciary duty to corporate creditors.  *Cf. Adelphia Commc'ns v. Bank of America* (*In re Adelphia Commc'ns Corp.*), 365 B.R. 24, 42 (Bankr. S.D.N.Y. 2007) (stating that in determining whether a tort for aiding and abetting breaches of fiduciary duties may be deemed actionable under Pennsylvania law by a federal district court sitting in New York, the relevant inquiry "is not whether the Pennsylvania Supreme Court has *already* recognized the existence of the cause of action, but rather whether the Pennsylvania Supreme Court would do so if presented with the issue").  This is so because the Committee's claim for breach of fiduciary duty to creditors would have failed on grounds of pleading deficiencies, regardless of whether the claim is deemed actionable by this Court.  As stated below, the Committee has not adequately alleged every element of its breach-of-fiduciary-duty claim.

motion based on a complaint that detailed a fraudulent scheme to misappropriate corporate assets);

*In re Amcast Indus. Corp.*, 365 B.R. at 98-101, 110-111 (holding that a claim for breach of

fiduciary duty to a corporation has been sufficiently pled under Ohio law in a complaint that

provided extensive details on the former directors' and officers' failure to adhere to the terms of

corporation's executive pension plan and the making of prohibited payments to the former CEO).


    *Aiding and Abetting Breach of Fiduciary Duty*

        The Amended Complaint alleges, without setting forth additional factual details, that

Defendants aided and abetted the alleged breaches of fiduciary duties to the extent they did not

directly breach such duties. The applicable body of law is not specified for this state law claim.

Defendant Dr. Blomen argues that Ohio law should apply, as the Debtor was incorporated in

Ohio. In response, the Committee notes that Ohio law may not govern the claim because of the

Debtor's headquarters in New York and substantial presence in Pennsylvania.[7] Accordingly, the

Committee reserved the right to argue that some other body of law applies. Due to significant

differences in the law of the potentially relevant jurisdictions and their impact on the substance

of the Court's analysis, the Court will perform the relevant choice-of-law analysis before ruling

on the Rule 12(b)(6) motion with respect to the aiding and abetting claim. *See In re Adelphia

Commc'ns Corp.*, 365 B.R. 24, 39 (Bankr. S.D.N.Y. 2007) (observing in connection with claims

for aiding and abetting breaches of fiduciary duty that a choice-of-law analysis had to be

performed at the outset due to significant differences among potentially applicable bodies of law

governing such claims).

---

[7] Although not included in the Amended Complaint, the Court may choose to take judicial notice of the Debtor's
principal place of business and the location of its principal assets, as such information has been included in the
Petition filed with this Court. *See Chambers v. Time Warner*, 282 F.3d 147, 153 (2d Cir. 2002) (stating that courts
may consider, on a motion to dismiss, facts of which judicial notice may be taken).

I.        Choice-of-Law Analysis

Caselaw in this district is split as to what choice-of-law principle applies to a claim for

aiding and abetting breach of fiduciary duty.  *See In re Adelphia Commc'ns Corp.*, 365 B.R. at

39-40.  Some courts have applied the internal affairs doctrine, discussed *supra* in connection

with the breach-of-fiduciary-duty claim, reasoning that a claim for aiding and abetting breach of

fiduciary duty, in a way similar to a claim for breach of fiduciary duty, relates to the internal

affairs of a corporation.  *See BBS Norwalk One, Inc. v. Raccolta, Inc.*, 60 F.Supp.2d 123, 129

(S.D.N.Y. 1999); *Lou v. Belzberg*, 728 F.Supp. 1010, 1023 (S.D.N.Y. 1990); *Buckley v. Deloitte*

*& Touche USA LLP*, 2007 WL 1491403, No. 06 Civ. 3291,* 34-35 (S.D.N.Y. May 22, 2007).  In

contrast, other courts have classified the aiding and abetting cause of action as a tort claim and

accordingly applied traditional tort conflicts of laws principles to determine the applicable state

law.  *See Solow v. Stone*, 994 F.Supp. 173, 177 (S.D.N.Y. 1998) (finding that the aiding and

abetting claim at issue was directed at defendants as independent actors, not in their capacity as

officers and directors, and that it was a "garden-variety tort issue[ ]"); *In re Adelphia Commc'ns*

*Corp.*, 365 B.R. at 40-41 (rejecting the "automatic application" of the internal affairs doctrine

and applying tort conflicts of laws principles because the aiding and abetting claims in question

did not involve "matters peculiar to the relationships among or between the corporation and its

current officers, directors, and shareholders.") (internal citations omitted).

If this Court were to apply the internal affairs doctrine, the law of the Debtor's state of

incorporation – Ohio law – would govern the aiding and abetting claim.  If tort conflicts of laws

principles were to be applied, however, an interest analysis would need to be performed by

identifying the significant contacts related to the claim, i.e., "the parties' domiciles and the locus

of the tort." *In re Lois/USA, Inc.*, 264 B.R. 69, 107 (Bankr. S.D.N.Y. 2001).  In the case of a

cause of action governing conduct to prevent injuries from occurring, such as the aiding and

abetting claim at issue here, the law of the place of the tort is generally determinative.  *See Id.* at

108.   The tort is deemed to have occurred where the related economic losses resulting from the

tort had been sustained.  *See Id.*  In the case of a tort for aiding and abetting breach of fiduciary

duty, related economic losses have been deemed to have been incurred in the relevant

corporation's principal place of business.  *See In re Adelphia Commc'ns*, 365 B.R. at 39

(applying the law of the debtor's principal place of business to claims for aiding and abetting

breaches of fiduciary duty because the relevant injury arising from the tort claims is deemed to

have been suffered there).  Given the foregoing, the Court would have deemed the Debtor's

principal place of business, New York, to be the locus of the aiding and abetting claim and

therefore would have applied New York law if it were to follow tort conflicts of law principles.


II. Aiding and Abetting Breach of Fiduciary Duty under Ohio Law

Further complicating the analysis is the fact that it is unsettled whether Ohio – the

jurisdiction whose law should govern if the internal affairs doctrine were to apply – recognizes

aiding and abetting liability generally and, as such, a claim for aiding and abetting breach of

fiduciary duty particularly.  *See Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 570 (6th Cir. 2006)

("It is unclear whether Ohio recognizes a common law cause of action for aiding and abetting

tortuous conduct."); *In re I.E. Liquidation, Inc.*, 2009 WL 2707223, No. 06-62179,*7 n.9 (Bankr.

N.D. Ohio Aug. 25 2009) (noting the uncertainty as to the existence of a claim for aiding and

abetting breach of fiduciary duty under Ohio law).  The sole case that has explicitly recognized

the existence of aiding and abetting liability in Ohio, *In re Amcast Indus. Corp.*, 365 B.R. at 112,

15

relies on an Ohio Supreme Court case that cited in dicta – and is interpreted to have adopted

implicitly – section 876(b) of the Restatement (Second) of Torts and the concert of action theory

set forth therein. *See Great Cent. Ins. Co. v. Tobias*, 37 Ohio St.3d 127, 130 (Ohio 1988) (citing

§ 876(b), Restatement of the Law 2d, Torts (1979)); *see also* § 876(b), Restatement of the Law

2d Torts ("For harm resulting to a third person from the tortuous conduct of another, one is

subject to liability if he . . . knows that the other's conduct constitutes a breach of duty and gives

substantial assistance or encouragement to the other so to conduct himself.").  Also relying on

*Great Central* and Restatement (Second) of Torts Section 876(b), one other court has concluded

that the Ohio Supreme Court would recognize aiding and abetting liability if faced with the issue,

while acknowledging that the Ohio Supreme Court has thus far never spoken on the issue.  *See*

*Aetna Cas. and Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 533 (6th Cir. 2000).  Other courts

in the Sixth Circuit have not relied on the *Great Central* case for the proposition that Ohio

recognizes aiding and abetting liability and have simply pronounced the issue to be unsettled in

Ohio.  *See, e.g., Pavlovich*, 435 F.3d at 570; *In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*, 617

F.Supp.2d at 719 n.4 ("The case law is unclear about whether a cause of action exists in Ohio for

civil aiding and abetting."); *In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*, 541 F.Supp.2d 986,

1015 (S.D. Ohio 2007).

      When recognized or deemed recognized as a valid cause of action in Ohio, a claim for

aiding and abetting breach of fiduciary duty consists of the following elements: (1) "knowledge

that the primary party's conduct is a breach of duty," and (2) "substantial assistance or

encouragement to the primary party in carrying out the tortious act."  *In re Nat'l Century Fin.*

*Enters., Inc. Inv. Litig.*, 541 Supp.2d at 1014; *see also Aetna Cas. and Sur. Co.*, 219 F.3d at 533

(citing § 876(b), Restatement (Second) of Torts) (other citations omitted); *In re Amcast Indus.*

16

*Corp.*, 365 B.R. at 112-13 (citing § 876(b), Restatement (Second) of Torts) (other citations omitted). The Amended Complaint fails to allege either of the foregoing elements. More importantly, the Amended Complaint contains a mere "naked assertion" that Defendants have aided and abetted breaches of fiduciary duty without any "further factual enhancement" supporting either element of the claim. *Iqbal*, 129 S.Ct. at 1950 (quoting *Twombly*, 550 U.S. at 557). Given the uncertain existence of the cause of action in Ohio and given the Committee's failure to plead the cause of action with the required factual enhancement, the Court finds that the aiding and abetting claim would most certainly not have survived the motion to dismiss if the Court were to apply Ohio law to the claim.

III. Aiding and Abetting Breach of Fiduciary Duty under New York Law

Unlike in Ohio, a cause of action for aiding and abetting breach of fiduciary duty is clearly recognized in New York. *See In re Adelphia Commc'ns Corp.*, 365 B.R. at 39 (stating that a cause for aiding and abetting breach of fiduciary duty is a "well-established tort" in New York). Under New York law, a claim for aiding and abetting breach of fiduciary duty consists of the following elements: (1) a breach of fiduciary duty, (2) that the defendant knowingly induced or participated in the breach, and (3) that the plaintiff suffered damages as a result of the breach. *See BBS Norwalk One, Inc.*, 60 F.Supp.2d at 130 n.2 (citing *S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843 (2d Cir. 1987)). Because the Court has previously concluded that the Committee's breach-of-fiduciary-duty claim has been deficiently pled, it follows that the first element of the aiding and abetting claim – a breach of fiduciary duty – has also not been pled adequately. Given that not every element of the claim has been sufficiently alleged, the aiding and abetting claim would have failed to survive the motion to dismiss if New York law were to govern.

17

IV. Pleading Sufficiency of the Aiding and Abetting Claim

As stated above, the Court has found the claim for aiding and abetting breach of fiduciary duty to be inadequately alleged under both Ohio and New York law, the only two bodies of law that could conceivably govern the claim if either of the two potentially applicable choice-of-law principles discussed previously were to be followed. Given the similarity of outcomes, there is no need for the Court to choose between the competing choice-of-law principles or to decide which of the two states' law should govern, as it is clear from the foregoing analysis that the aiding and abetting claim cannot survive the motion to dismiss regardless of such choices. The Court concludes accordingly that the Amended Complaint has failed to allege a claim for aiding and abetting breach of fiduciary duty with the amount of factual enhancement required under *Twombly* and hereby grants the Dr. Blomen's and Blomenco B.V.'s motion to dismiss to the extent it relates to the claim.

*Constructive Fraudulent Transfers*

I. Constructive Fraudulent Transfer under section 548(a)(1)(B) of the Code

The Committee seeks to avoid bonuses and other compensation received by Defendants during the two-year period prior to the Petition Date as constructive fraudulent transfers under section 548(a)(1)(B) of the Code. In order for the Committee to plead successfully a cause of action under section 548(a)(1)(B), the Amended Complaint must provide adequate facts to support each of the following elements of the claim: that within two years of the Petition Date, (1) the Debtor transferred an interest in property; (2) the Debtor (x) was insolvent at the time of the transfer or became insolvent as a result of the transfer, (y) was engaged in business or was

18

about to engage in business for which the Debtor's remaining property constituted unreasonably small capital, or (z) intended to incur or believed that it would incur debts beyond its ability to pay as they matured; and (3) the Debtor received less than reasonably equivalent value in exchange for such transfer. *See In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721, 735 (Bankr. S.D.N.Y. 2008).

The Amended Complaint sets forth little more than a "formulaic recitation of the elements" of the section 548(a)(1)(B) claim. *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). In particular, there is a complete absence of facts supporting the allegation that the Debtor received less than reasonably equivalent value in exchange for the payments made to Defendants. Given such absence, the Court concludes that the Committee's section 548(a)(1)(B) constructive fraudulent transfer claim has failed to survive the motions to dismiss. [8] *In re Enron Corp.*, 2006 WL 2400369, No. 01-16034, *8 (Bankr. S.D.N.Y. May 11, 2006) (dismissing a constructive fraudulent transfer claim on a Rule 12(b)(6) motion because the plaintiffs have failed to allege that the relevant debtor entity did not receive reasonably equivalent value); *cf. In re M. Fabrikant & Sons, Inc.*, 294 B.R. at 736 (finding that the amended complaint sufficiently alleges the lack of reasonably equivalent value based on the "worthless or near-worthless" value of loan receivables received by debtors in exchange for the alleged transfers).

II. State Constructive Fraudulent Transfer Claim

---

[8] As discussed below in further detail in connection with the preference claims, the Amended Complaint has also completely failed to identify any specific transfer made to Mr. Freeh. This pleading defect alone would also constitute independent grounds for dismissing the constructive fraudulent transfer claims against Mr. Freeh, as the relevant pleadings do not provide even the minimum of information required to "give the defendant fair notice of what the plaintiff's claim is," as required under Federal Rule of Civil Procedure 8(a). *In re Fabrikant & Sons*, 394 B.R. at 735.

The Amended Complaint also alleges that bonuses and other compensation received by Defendants during the two-year period prior to the Petition Date constitute constructive fraudulent transfers under section 544(b) of the Code and state law made applicable thereby. *See In re WorldCom, Inc.*, 2003 WL 23861928, No. 02-13533, *40 (Bankr. S.D.N.Y. Oct. 31, 2003) (noting that applicable law referenced in section 544(b) means state law) (citing *Traina v. Whitney Nat'l Bank*, 109 F.3d 244, 246 (5th Cir. 1997)). The Amended Complaint does not specify which state's law applies to this claim, and Defendant Mr. Freeh has briefed his claim under the assumption that either New York or Ohio law may apply.[9] In the absence of an agreement by the parties with respect to applicable law, the Court will perform a choice-of-law analysis for the claim prior to ruling on the state constructive fraudulent transfer claim.

The law of the jurisdiction with the most significant contacts to the relevant transfers and relevant parties applies to a state constructive fraudulent transfer claim brought under section 544(b) of the Code. *See In re WorldCom, Inc.*, 2003 WL 23861928 at *40. Contacts to be considered include the domicile, residence, place of incorporation and place of business of the parties; the place of injury; and the place of injury-causing conduct. *See Id.* (citing Restatement (Second) of Conflicts of Laws, § 145). Ohio is the Debtor's place of incorporation and New York is the Debtor's principal place of business. The location of the alleged injury is most likely Ohio or New York, given that the Debtor is the victim of the alleged constructive fraudulent transfers. Because compensation and other financial decisions (such as the alleged payment of

---

[9] The motion filed by Dr. Blomen and Blomenco B.V. does not attempt to specify applicable state law. Instead, this group of Defendants argues that the Committee has no standing to bring the section 544 claim because it has failed to allege the existence of a specific triggering creditor who could have avoided the transfer under state law. The main case cited for this standing requirement, however, finds such requirement to be unnecessary. *See Musicland Holding Corp. v. Best Buy Co., Inc.* (*In re Musicland Holding Corp.*), 398 B.R. 761, 780 (Bankr. S.D.N.Y. 2008). The *Musicland* court acknowledges the existence of a caselaw split on this issue but observes that all relevant decisions in the Southern District of New York have rejected the requirement to identify an actual creditor. *See Id.* at 779-80.

excessive bonuses and other compensation at issue here) were most likely made at the corporate

headquarters of the Debtor, the injury-causing conduct arguably took place in New York, the

principal place of business.  Given the foregoing, the jurisdiction with the most significant

contacts is likely to be Ohio or New York.[10]

In Ohio, a transfer can be avoided as a constructive fraudulent conveyance if a debtor did

not receive reasonably equivalent value in exchange for the transfer and if either (x) the debtor

was engaged or was about to engage in a transaction for which the remaining assets of the debtor

were unreasonably small in relation to the transaction or (y) the debtor intended to incur, or

believed or reasonably should have believed that it would incur, debts beyond its ability to pay as

they came due.  *See* § 1336.04, Ohio Uniform Fraudulent Transfer Act.  Similarly, under the

New York Debtor & Creditor Law, a constructive fraudulent transfer contains the following

elements: (1) that the transfer was made without fair consideration, and (2) either (a) the debtor

was insolvent or was rendered insolvent by the transfer, (b) the debtor was left with unreasonably

small capital, or (c) the debtor intended or believed that it would incur debts beyond its ability to

pay as the debts matured.  *See In re M. Fabrikant & Sons, Inc.*, 394 B.R. at 734 (citing New

York Debtor & Creditor Law, §§ 273-75).

Because, as stated above, the Amended Complaint sets forth no facts supporting the

allegation that the Debtor failed to receive "reasonably equivalent value" or "fair consideration"

in exchange for the payment of bonuses and other compensation to Defendants, the Court

---

[10] The locations of Defendants have little impact on the analysis due to the geographically dispersed nature of their residences.  According to the Amended Complaint, Defendants maintain addresses at places as diverse as the Netherlands, Pennsylvania, Texas, New York, Connecticut, New Mexico, California, Ohio and Florida.  Similarly, creditors are not concentrated in one or two states, although multiple secured and unsecured creditors are located in Ohio, Pennsylvania and New York.  *See* Schedules D, E, F to the Statement of Financial Affairs.

concludes that the Committee's section 544 claim has also failed to survive the motions to

dismiss, regardless of whether Ohio or New York law applies.

*Preferences*

The Amended Complaint states that "during the two-year period" prior to the Petition

Date, each Defendant received substantial transfers in the form of salary, benefits, bonuses,

expense payments, stock and/or stock options and other compensation. *See* AC at ¶ 86.  The

Committee seeks to avoid the transfers as preferences under section 547 of the Code.  Although

Dr. Blomen is identified as the recipient of $168,452.92 in allegedly avoidable bonus payments,

*see* AC at Exh. A, other alleged transfers to Dr. Blomen and Mr. Freeh are not identified

specifically by amount or otherwise.

Section 547 of the Code authorizes the avoidance of "any transfer of an interest of the

debtor in property" if five conditions enumerated in subsection (b) are satisfied, subject to one of

seven defenses available under subsection (c).  *See Pereira v. United Jersey Bank, N.A.,*201 B.R.

644, 656 (Bankr. S.D.N.Y. 1996).  Specifically, the trustee (or a party who has stepped into the

trustee's shoes, as is the case here) may avoid any transfer of an interest of the debtor in property

–

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made –
>> (A) on or within 90 days before the date of the filing of the petition; or
>> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if –
>> (A) the case were a case under chapter 7 of this title;
>> (B) the transfer had not been made; and

22

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

Thus, for purposes of pleading sufficiency, the Amended Complaint must allege enough facts with respect to each of the foregoing elements of section 547(b) in order to put Defendants on notice for the preference claims.

With respect to the preference claims brought against Mr. Freeh, however, the Amended Complaint contains so few relevant facts that it amounts merely to a "a formulaic recitation of the elements." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). Without a single relevant detail such as date, amount or type of transfer, it is impossible to identify any specific avoidable transfer to Mr. Freeh. As such, the Court finds the pleadings relating to the preference claims brought against Mr. Freeh to be deficient under the standard delineated in *Twombly* and under Federal Rule of Civil Procedure 8.[11] The preference claims against Mr. Freeh therefore cannot survive Mr. Freeh's motion to dismiss.

Although the Amended Complaint identifies one of the alleged transfers made to Dr. Blomen by amount ($168,452.92) and type (bonus payment), it does not plead enough facts with respect to any other transfer for notice and identification purposes. Furthermore, the Amended Complaint is factually deficient in multiple respects, resulting in inadequate pleadings with respect to more than one element of all alleged preferential transfers, including the sole payment that has been identified by amount and type. For example, no allegation has been made that any transfer was made for or on account of a specific and identifiable antecedent debt owed by the

---

[11] Although Schedule 3(c) to the Statement of Financial Affairs sets forth the amount and type of each transfer made to Mr. Freeh during the one-year period prior to the Petition Date, the contents of the schedule alone do not contain sufficient information to enable the Court to identify the specific transfers with respect to which the preference claims relate.

Debtor. Nor have any facts been proffered to enable the Court to determine whether the transfers

had been made between ninety days and one year before the Petition Date, assuming the alleged

officer and director status of the relevant Defendants (and therefore the insider status thereof) to

be true. Given the foregoing, the Court concludes that the preference claims brought against Dr.

Blomen and Blomenco B.V. have similarly failed to survive the relevant motion to dismiss.

*Deepening Insolvency*

The Amended Complaint alleges that starting on or about December 31, 2007 and

continuing until the Petition Date, Defendants caused the Debtor to delay filing an insolvency

petition. Defendants allegedly permitted the Debtor to incur obligations beyond its ability to pay

at a time when they knew or should have known that the Debtor was insolvent. Thus the Debtor

is said to have suffered injury from "fraudulently extended life, dissipation of assets and

increased insolvency." AC at ¶ 74. The Debtor's creditors also allegedly "lost substantial value

that would have otherwise been available to satisfy their claims." Id.

The Amended Complaint does not state the applicable law for this cause of action. Dr.

Blomen and Blomenco B.V. argue that Ohio law governs, and Mr. Freeh asserts that either New

York or Ohio law governs. In a later motion, the Committee argues that the law of Pennsylvania,

one of two locations of principal assets listed in the Petition,[12] applies. Because there are

substantial differences in the relevant law of the above-mentioned jurisdictions[13] and because the

---

[12] The other location is Ohio.

[13] Deepening insolvency is likely to be a viable cause of action in Pennsylvania under certain circumstances. *See Official Comm. v. Lafferty*, 267 F.3d 340, 349 (3d Cir. 2001) ("[The Third Circuit] concludes that, if faced with the issue, the Pennsylvania Supreme Court would determine that 'deepening insolvency' may give rise to a cognizable injury."); *but see Seitz v. Detweiler (In re CITIX Corp.)*, 448 F.3d 672, 680 (3d Cir. 2006) (limiting the holding in *Lafferty* to causes of action sounding in fraud). In contrast, neither Ohio nor New York has recognized deepening insolvency as an independent cause of action. *See e.g. In re Amcast Indus. Corp.*, 365 B.R. 91, 119 (Bankr. S.D. Ohio 2007) ("[T]he court concludes that Ohio courts would not recognize deepening insolvency as an independent

24

parties do not agree on the body of applicable law, the Court will conduct a choice-of-law

analysis as the initial step in its inquiry relating to the deepening insolvency claim.


I. Choice-of-Law Analysis

When recognized or deemed recognized as a cause of action, deepening insolvency has

been classified as a tort.  *See In re CITIX Corp.*, 448 F.3d at 680 n.11 (referring to the cause of

action as an economic tort); *In re Amcast Indus. Corp.*, 365 B.R. at 116 (suggesting that

deepening insolvency would be a tort if it were recognized as an independent cause of action); *In

re Global Servs. Group LLC*, 316 B.R. at 458 (same).  The choice-of-law principles of New

York, the forum state in the present case, call for the application of an interest analysis to

determine the governing law in the context of a tort.  *See Padula v. Lilarn Properties Corp.*, 84

N.Y. 2d 519, 521 (N.Y. 1994).  Two inquiries are involved to determine which jurisdiction has

the greatest interest in having its law applied: "(1) what are the significant contacts and in which

jurisdiction are they located; and (2) whether the purpose of the law is to regulate conduct or

allocate loss."  *Id.*  As discussed previously in connection with the choice-of-law analysis for the

aiding and abetting claim, in the case of a tort involving the violation of a law intended to

regulate conduct rather than to allocate loss, the place of the tort has a predominant and generally

exclusive interest in the litigation.  *See Id.* at 522 ("If conflicting conduct-regulating laws are at

issue, the law of the jurisdiction where the tort occurred will generally apply because that

jurisdiction has the greatest interest in regulating behavior within its borders.") (internal citation

and quotation marks omitted); *accord In re Lois/USA, Inc.*, 264 B.R. at 108 (citing *Padula*, 84

N.Y. 2d at 522).  The tort of deepening insolvency, if recognized, involves a violation of state

cause of action."); *Kittay v. Atlantic Bank (In re Global Servs. Group LLC)*, 316 B.R. 451, 458 (Bankr. S.D.N.Y.
2009) (noting that deepening insolvency is not an independent cause of action in New York).

laws intended to govern standards of conduct.  Accordingly the law of the place where deepening

insolvency is allegedly to have been committed should govern the cause of action.  Because the

alleged delay in filing the Petition – the crux of the claim – most likely occurred in the context of

management decisions made at the Debtor's principal place of business located in New York, the

law of the place of the tort is New York.  *Cf. In re Lois/USA, Inc.*, 264 B.R. at 107 (applying a

New York interest analysis to several tort claims brought on behalf of debtor's estate and

concluding that the law of the debtor's principal place of business governs).  Thus New York law

should govern this cause of action.[14]


II. Viability of Cause of Action

As stated above, New York does not recognize deepening insolvency as an independent

cause of action.  *See Interstate Foods v. Lehmann*, 2008 WL 4443850, No. 06 Civ. 13469, *3

(S.D.N.Y. Sept. 30, 2008); *In re Global Servs. Group LLC*, 316 B.R. at 458 ("No reported New

York case . . . has ruled that 'deepening insolvency' is an independent tort.").  In New York,

deepening insolvency is regarded as a theory of damages that may only result from the breach of

---

[14] Dr. Blomen and Blomenco B.V. cite *In re Magnesium Corp.*, 399 B.R. 722 (Bankr. S.D.N.Y. 2009) as the basis
for applying Ohio law – the law of the Debtor's place of incorporation – to the claim.  In *Buchwald*, however,
deepening insolvency was not actually pled as a cause of action.  *See Id.* at 760, n.128 ("Only a tortured reading of
the Complaint makes deepening insolvency an element of any of the traditional tort causes of action stated.")
(internal citation and quotation marks omitted).  The oblique reference made therein to deepening insolvency merely
suggests that Delaware law, the law of the debtors' place of incorporation, would have applied to a deepening
insolvency claim – if the complaint were to be interpreted to allege such claim – in the context of allegations
involving violations of fiduciary duties by the debtors' officers and directors.  *See Id* ("Deepening insolvency is not
recognized as a separate cause of action under Delaware law, the state under whose law each of [the debtors] were
organized, *which governs the duties of officers and directors to the companies they serve*.") (emphasis added).  As
discussed and concluded previously, a claim for breach of fiduciary duty would have indeed been governed by the
law of the debtors' place of incorporation under the internal affairs doctrine.  In any event, even if the Court were to
apply Ohio law to the instant deepening insolvency claim, dismissal thereof would still have been warranted, as
neither Ohio nor New York recognizes deepening insolvency as an independent cause of action.

a separate duty or the commission of a separate tort.[15]  *See Id.*  A plaintiff seeking to recover

under a deepening insolvency theory therefore must demonstrate that in prolonging the relevant

corporation's life and increasing its debts, the defendants' actions gave rise to a separate cause of

action.  *See Id.* Given that elsewhere in this Opinion, the Court has dismissed all independently-

recognized causes of action brought by the Committee, no basis can be found for sustaining the

Committee's deepening insolvency claim even if the deepening insolvency claim were

interpreted, in the light most favorable to the Committee as plaintiff, to have been alleged merely

as a theory of damages.  This is so given the fact that no separate and viable cause of action to

which such theory of damages could plausibly attach has withstood the relevant motion(s) to

dismiss.  Because deepening insolvency is not recognized as an independent cause of action

under New York law and because the Committee's deepening insolvency claim cannot stand

alone as a theory of damages in light of the dismissal of independent causes of action to which it

could have related, the claim is hereby dismissed against Mr. Freeh, Dr. Blomen and Blomenco

B.V.


*Breach of Employment Agreements*

---

[15] Courts around the country have differed on the treatment of deepening insolvency.  Some have viewed it as an
independent cause of action, *see, e.g. Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d
340, 349-52 (3d Cir. 2001) (addressing Pennsylvania law), while others have considered it to be a mere theory of
damages.  *See In re Global Servs. Group LLC*, 316 B.R. 451, 457-58 (Bankr. S.D.N.Y. 2004) (citing *Schacht v.
Brown*, 711 F.2d 1343, 1350 (7th Cir. 1983); *Allard v. Arthur Andersen & Co.*, 1, 6 (*In re Latin Inv. Corp.*), 168 B.R. 1, 6 (Bankr. D.C. 1993)).  Still
1996); *Drabkin v. L & L Constr. Assocs., Inc.* (*In re Latin Inv. Corp.*), 168 B.R. 1, 6 (Bankr. D.C. 1993)).  Still
others have rejected or questioned the validity of deepening insolvency, both as a theory of damages and a cause of
action.  *See Id.* (citing *Florida Dep't of Ins. v. Chase Bank of Texas Nat'l Ass'n*, 274 F.3d 924, 935-36 (5th Cir.
2001); *Askanase v. Fatjo*, 1996 WL 33373364, No.Civ. A.H-91-3140, *28 (S.D. Tex. Apr. 1, 1996); *Feltman v.
Prudential Baches Sec.*, 122 B.R. 466, 473-74 (S.D. Fla. 1990); *Coroles v. Sabey*, 79 P.3d 974, 983 (Utah Ct. App.
2003)).  Those courts that have denied the treatment of deepening insolvency as an independent cause of action view
it as redundant with causes of action for breach of fiduciary duty and for fraud.  *See e.g., Trenwick America Litig.
Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 205 (Del. Ch. 2006).

The Amended Complaint further alleges that Defendants breached certain "employment-related agreement[s]." AC at ¶ 68. Nowhere in the Amended Complaint are the agreements in question identified in any manner. As such, it is of course impossible for one to point to any provision of an unspecified agreement upon which the claim may be based. *See In re Adelphia Commc'ns Corp.*, 2007 WL 2403553 at *4 ("In order to adequately allege the existence of an agreement, a plaintiff must plead the provisions of the contract upon which the claim is based.") (internal citation and quotation marks omitted). The pleadings with respect to the Committee's breach-of-contract claim thus fall woefully short of the requirement under Federal Rule of Civil Procedure 8(a)(2) that a plaintiff's pleadings give the Defendants "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. In light of such deficient pleadings, the Court accordingly grants the relevant motion to dismiss to the extent it relates to the breach-of-contract claim. *See In re Adelphia Commc'ns Corp.*, 2007 WL 2403553 at *5 (dismissing a breach-of-contract claim due to the plaintiff's failure to name any contract or identify any term of any agreement purportedly breached).

*Unjust Enrichment*

The Amended Complaint pleads that "Defendants received interests in property that rightfully belonged to the Debtor" as a result of their receipt of allegedly excessive bonuses and other compensation. AC at ¶ 62. Because the Debtor did not receive "any benefit or received less than reasonably equivalent value" in return for the compensation payments made to Defendants, Defendants unfairly benefited from such payments and were "unjustly enriched thereby." AC at ¶¶ 63-64. The Committee seeks recovery of the value of the payments from Defendants based on the foregoing allegations of unjust enrichment.

I. Choice-of-Law Analysis

Because the parties disagree as to the body of law to be applied to the unjust enrichment

claim,[16] the Court must perform a choice-of-law analysis to determine the applicable law prior to

assessing the pleading sufficiency of the claim.  New York choice-of-law principles dictate that

an interest analysis be applied to a claim sounding in equity, such as a claim for unjust

enrichment.  *See Icebox-Scoops, Inc. v. Finanz St. Honore, B.V.*, 676 F.Supp.2d 100, 109-10

(E.D.N.Y. 2009) (applying New York's interest analysis to determine the governing law for an

unjust enrichment claim) (citing *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996)); *Tyson v.*

*Straight-Out Promotions, LLC* (*In re Tyson*), 412 B.R. 623, 635 n.14 (Bankr. S.D.N.Y. 2009)

(same).  As previously analyzed and concluded in connection with the application of an interest

analysis to the deepening insolvency claim, New York law – the law of the place where the

allegedly actions giving rise to the unjust enrichment claim occurred – should also govern the

unjust enrichment claim.  Such is the case given that relevant compensation decisions were most

likely made in New York, the Debtor's principal place of business.  *See Icebox-Scoops, Inc.*, 676

F.Supp.2d at 110 (applying the law of New York, i.e. the plaintiff's principal place of business

and the place of the tort, to an unjust enrichment claim).


II. Pleading Sufficiency

Under New York law, a claim for unjust enrichment consists of the following three

elements: "that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good

---

[16] Dr. Blomen and Blomenco B.V. assert that Ohio law applies to the claim while Mr. Freeh cites both New York and Ohio law in his briefs.  The Committee, in contrast, simply reserves the right to argue at a later point in the proceeding that another state's law applies.

conscience militate against permitting defendant to retain what plaintiff is seeking to recover."

*Carroll v. LeBoeuf, Lamb, Greene & MacRae, LLP*, 623 F.Supp.2d 504, 514 (S.D.N.Y. 2009)

(quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004)) (other

citation omitted); *accord Giordano v. Thomson*, 564 F.3d 163, 170 (2d Cir. 2009).  Although the

Amended Complaint does allege that Defendants were enriched in the form of bonus and other

compensation payments presumably paid by the Debtor and thus at the Debtor's expense, the

Amended Complaint does not adequately explain factually how "equity and good conscience

militate against" allowing Defendants to retain such payments.  *Cf. Pawaroo v. Countrywide*

*Bank*, 2010 WL 1048822, No. 09-CV-2924,*7 (E.D.N.Y. Mar. 18, 2010) ("[A] claim for unjust

enrichment must specify the manner and extent to which a defendant was unjustly enriched.")

Conclusory and general allegations in paragraphs six-three and sixty-four of the Amended

Complaint that the Debtor received disproportionately little or no benefit in connection with the

payments do not shed light on the third element of the claim.  Moreover, allegations in paragraph

five that Defendants "caused [the Debtor's] insolvency and financial crisis and then compounded

[its] problems by awarding themselves generous bonuses" are insufficient for purposes of

pleading the third element given the complete lack of specific pleadings with respect to causation

and given the dismissal of the deepening insolvency claim elsewhere in this Opinion.  *Cf.*

*Carroll*, 623 F.Supp.2d at 513-14 (refusing to find that equity militates against permitting a

defendant to retain the benefits in question where the plaintiff's other claims, sounding in fraud,

have been dismissed).  Because the Committee has failed to plead the third element of the claim

adequately, the Court concludes that the unjust enrichment claim cannot survive the motions to

dismiss.  *See Pawaroo*, 2010 WL 1048822 at *7 (dismissing an unjust enrichment claim because

the plaintiff alleged "little more than the general notion that [the defendant] unjustly received

benefits".); *cf. Old Republic Nat'l Title Ins. Co. v. Cardinal Abstract Corp.*, 14 A.D.3d 678, 680

(N.Y. App. Div. 2d 2005) ("[T]he plaintiff's allegation that the appellants received benefits,

standing alone, is insufficient to establish a cause of action to recover damages for unjust

enrichment") (internal citations omitted).


*Equitable Subordination*

     The Amended Complaint asserts that the various alleged actions of Defendants constitute

"inequitable, unconscionable, and unfair conduct" that "resulted in harm to the Debtor and its

creditors and/or gave [] Defendants an unfair advantage over the Debtor's other creditors."  AC

at ¶¶ 77-78.  The Committee requests equitable subordination of all of Defendants' claims under

section 510 of the Code based on such alleged actions.[17]

     Section 510(c) of the Code provides that a bankruptcy court may, "under principles of

equitable subordination, subordinate for purposes of distribution all or part of an allowed claim

to all or part of another allowed claim, or all or part of an allowed interest to all or part of another

allowed interest. . . ."  11 U.S.C. § 510(c)(1).  This section of the Code permits a bankruptcy

court to subordinate the claim of a creditor if "the conduct of the claimant in relation to other

creditors is or was such that it would be unjust or unfair to permit the claimant to share pro rata

with the other claimants of equal status," notwithstanding the "apparent legal validity" of the

relevant claim.  *In re Lois/USA, Inc.*, 264 B.R. at 132.

     To plead equitable subordination successfully, a complaint must contain enough facts to

satisfy each part of the following three-part test: (1) that the defendant-claimant engaged in

---

[17] Schedule E ("Creditors Holding Unsecured Priority Claims") to the Statement of Financial Affairs lists John Freeh as a creditor holding a $175,384.74 unsecured claim in the form of employee deferred salary incurred in 2008, of which $10,950.00 has been classified as the amount entitled to priority.  Neither Dr. Blomen nor Blomenco B.V. appear on any schedule of creditors.

inequitable conduct, (2) that the misconduct caused injury to the creditors or conferred an unfair

advantage on the defendant-claimant and (3) that bestowing the remedy of equitable

subordination is not inconsistent with bankruptcy law.  *See In re Mobile Steel Co.*, 563 F.2d 692,

700 (5th Cir. 1977) (establishing the three-part test), cited with approval in *United States v.*

*Noland*, 517 U.S. 535, 538 (1996); *see also In re Lois/USA*, 264 B.R. at 132 n.160 ("*Mobile*

*Steele's* three prong analysis has been widely adopted by courts as the proper test for equitable

subordination under 510(c).") (internal citation and quotation marks omitted).  The third prong of

the *Mobile Steel* test carries minimal significance today because the current Bankruptcy Code

provides explicitly for the remedy of equitable subordination, whereas the former Bankrupcty

Act – under which *In re Mobile Steel Co.* was decided – did not.  *See In re Verestar, Inc.*, 343

B.R. 444, 461 (Bankr. S.D.N.Y. 2006)*; accord In re 80 Nassau Assocs.*, 169 B.R. 832, 841

(Bankr. S.D.N.Y. 1994) (noting that the third prong of the *Mobile Steel* test is "likely to be

moot").  Accordingly, a complaint that satisfies the first two prongs of the *Mobile Steel* test

would survive a motion to dismiss.

In order to satisfy the first prong of the test (i.e. that Defendants engaged in inequitable

conduct), the relevant allegations in the Amended Complaint must adequately delineate conduct

on the part of Defendants that "may be lawful but is nevertheless contrary to equity and good

conscience." *In re Verestar Inc.*, 343 B.R. at 461.  Such inequitable conduct may compass fraud,

breach of a fiduciary duty, unjust enrichment, or "enrichment brought about by unconscionable,

unjust or unfair conduct or double-dealing."  *Id.; accord In re Lois/USA*, *Inc.*, 264 B.R. at 134

(quoting *In re 80 Nassau Assocs.*, 169 B.R. at 837).  Traditionally, inequitable conduct has been

found only in cases involving at least one of the following three paradigms: (i) fraud, illegality or

breach of fiduciary or other legally recognized duties; (ii) undercapitalization of the debtor; and

(iii) control or use of the debtor as a mere instrumentality or alter ego to benefit another. *See In re Lois/USA, Inc.*, 264 B.R. at 134-35; *see also In re Verestar Inc.*, 343 B.R. at 461; *New Jersey Steel Corp. v. Bank of New York*, 1997 WL 716911, No. 95 Civ. 3071, *4 (S.D.N.Y. Nov. 17, 1997). Thus the Committee must sufficiently allege conduct that fits within at least one such paradigm in order to meet the first condition of the *Mobile Steel* test. *See In re Lois/USA, Inc.*, 264 B.R. at 135.

The scrutiny for presence of inequitable conduct is more stringent with respect to creditors who are insiders of the debtor, such as the moving Defendants in the instant case,[18] as opposed to ordinary creditors. *See New Jersey Steel Corp.*, 1997 WL 716911 at *4; *In re Interstate Cigar Company, Inc.*, 182 B.R. 675, 679 (Bankr. E.D.N.Y. 1995). In such cases, a breach of fiduciary duty or even mere engagement in conduct that is "somehow unfair" on the part of the insider may constitute inequitable conduct. *See In re Interstate Cigar Company, Inc.*, 182 B.R. at 679 (citing *Bellanca Aircraft*, 850 F.2d at 1282, n. 13 (8th Cir. 1988)). In the present case, however, the Court has previously dismissed the Committee's breach of fiduciary and unjust enrichment claims against the moving Defendants-creditors for failure to state such claims. Thus neither breach of fiduciary duty nor unjust enrichment constitutes valid grounds for the Committee's allegations of inequitable conduct. With respect to the remaining types of conduct enumerated in the first (actual fraud, illegality, etc.) and third (control or use of debtor as

---

[18] Section 101(31)(B) of the Code provides that if a debtor is a corporation, the term "insider" includes:

    (i) director of the debtor;
    (ii) officer of the debtor;
    (iii) person in control of the debtor;
    (iv) partnership in which the debtor is a general partner;
    (v) general partner of the debtor; or
    (vi) relative of a general partner, director, officer, or person in control of the debtor; . . . .

Because Dr. Blomen and Mr. Freeh allegedly served as directors or officers of the Debtor, they are deemed to be insiders for purposes of this analysis based on sub-clauses (i) and (ii) of this section.

an instrumentality) paradigms described in the immediately preceding paragraph, the Amended

Complaint contains no relevant allegations.  In light of (i) the Committee's failure to state the

breach-of-fiduciary-duty and unjust enrichment claims and (ii) the complete lack in the Amended

Complaint of allegations relating to other applicable conduct, the stricter scrutiny applicable to

insiders is inapposite to conduct falling within the first and third paradigms, as there do not exist

sufficient allegations relating to any such conduct to which such scrutiny may be applied.  It also

follows that no basis may be found for an inference of inequitable conduct under either the first

or third paradigm.

In light of the foregoing analysis, any pleadings relating to inequitable conduct would

have to be based upon the remaining paradigm, undercapitalization of the Debtor.  Paragraph

thirty-six of the Amended Complaint does contain some allegations of undercapitalization.  In

the absence of adequate pleadings relating to the types of conduct described under the first and

third paradigms, however, undercapitalization alone does not constitute sufficient grounds for an

allegation of inequitable conduct.  *See In the Matter of Lifschultz Fast Freight*, 132 F.3d 339,

345 (7th Cir. 1997) (holding that undercapitalization in itself does not constitute inequitable

conduct justifying equitable subordination of an insider's claim under section 510 (c) of the

Code); *accord Drake v. Franklin Equipment Co.* (*In re Franklin Equipment Co.*), 416 B.R. 483,

514, n.34 (E.D. Va. 2009).  An adequately alleged claim for equitable subordination requires

well-pled allegations of "suspicious, inequitable conduct" beyond mere undercapitalization.  *See

Id.* (citing *In re Branding Iron Steak House*, 536 F.2d 299, 302 (9th Cir. 1976)).

Given the insufficiency of undercapitalization as an independent basis for pleading

inequitable conduct and given the deficient or entirely absent pleadings with respect to other

types of inequitable conduct, the Court concludes that the first prong of the *Mobile Steel* test –

34

Defendants' alleged engagement in inequitable conduct – has not been satisfied.  There is no

need to analyze the remaining viable prong of the *Mobile Steel* test (i.e. injury to creditors or

unfair advantage to claimants), as the equitable subordination claim can only withstand the

relevant motion to dismiss if both parts of the test are satisfied.  Moreover, it is a simple matter

of logic that one cannot speak of injury suffered or unfair advantage conferred if the conduct

from which such injury or advantage allegedly emanated cannot be established in the first

instance.  The Court concludes accordingly that the equitable subordination claim against the

moving Defendants, Dr. Blomen and Blomenco B.V., must be dismissed.


*Objections to Claims Against the Debtor's Estate*

        The Committee urges the Court to disallow all claims of Defendants under section 502(d)

of the Code because Defendants "have not turned over property recoverable under, *inter alia*,

sections 544, 547, 548, and 550 of the Bankruptcy Code."  AC at ¶ 84.  Section 502(d) of the

Code states in relevant part:

> [T]he court shall disallow any claim of any entity from which property is
> recoverable under section . . . 550 . . . of this title or that is a transferee of
> a transfer avoidable under section . . . 544, . . . 547, 548 . . . of this title,
> unless such entity or transferee has paid the amount, or turned over any
> such property, for which such entity or transferee is liable under section . . .
> 550 . . . of this title.

Section 502 "precludes entities which have received voidable transfers from sharing in the

distribution of the assets of the estate unless and until the voidable transfer has been returned to

the estate."  *Rhythms NetConnections Inc. v. Cisco Systems Inc.* (*In re Rhythms NetConnections

Inc.*), 300 B.R. 404, 409 (Bankr. S.D.N.Y. 2003) (internal citation and quotation marks omitted).

Because the Committee has failed to state any avoidance claim under sections 544, 547 or 548 of

the Code, the issue of unreturned voidable transfers is inapposite.  As such, there is no basis for

35

disallowing Defendants' claims. Accordingly, the relevant Defendants' motion to dismiss is granted to the extent it relates to the Committee's objections to such Defendants' claims.

*Leave to Amend*

Federal Rule of Civil Procedure 15(a)(2) states that following an initial amendment to a complaint, further leave to amend should be freely granted at the court's discretion when justice so requires.[19] One main exception to this general rule is futility of amendment. *See Acito v. Imcera Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995); *In re M. Fabrikant & Sons, Inc.*, 394 B.R. at 746. Because by proffering additional relevant facts, the Committee may be able to cure the above-described pleading defects with respect to all dismissed claims except for the deepening insolvency claim, the Committee is hereby granted leave to replead such claims in light of the relatively liberal standard for granting such leave. With respect to the deepening insolvency claim, however, a further amendment would be futile because no amount of additional factual enhancement can alter the legal conclusion that the cause of action, as discussed above, is not recognized in New York. As such, leave to replead the deepening insolvency claim is hereby denied. *Cf. In re Merrill Lynch & Co., Inc.*, 273 F.Supp.2d 351, 393 (S.D.N.Y. 2003) (denying leave to amend because pleading defects with respect to claims that were time-barred as a matter of law were not curable).

CONCLUSION

For the reasons stated above, the motions to dismiss filed by Dr. Blomen and Blomenco B.V. and by Mr. Freeh, respectively, are both granted in their entirety. With the exception of the

---

[19] A plaintiff may amend its complaint once as a matter of course under Federal Rule of Civil Procedure 15(a)(1). The Committee has already done so, as described *supra* in footnote 1.

deepening insolvency claim, the Committee is granted leave to replead all dismissed claims against the relevant moving Defendants within sixty days of the entry of an order regarding this Opinion.

The Defendants are to settle an order consistent with this Opinion.


Dated: New York, New York
      April 20, 2010


                **s/Arthur J. Gonzalez**
                CHIEF UNITED STATES BANKRUPTCY JUDGE